**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Plaintiffs 1-3, on behalf of themselves and all others similarly situated, | : |
| Plaintiffs, | : |
| v. | : |
| THE CITY OF NEW YORK; JESSICA S. TISCH, Police Commissioner for the City of New York, in her official capacity; JOSEPH KENNY, Chief of Detectives for the New York City Police Department, in his official capacity; and JOHN HART, Assistant Chief of Intelligence for the New York City Police Department, in his official capacity, | : 25-CV-2397 (BMC) |
| Defendants. | : |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND CONSOLIDATED REPLY TO PLAINTIFFS' MOTIONS TO CERTIFY A CLASS AND TO PROCEED ANONYMOUSLY

Dated: September 25, 2025
     New York, N.Y.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................ 1

STANDARD OF REVIEW ............................................................................................... 3

ARGUMENT ..................................................................................................................... 4

    I.   The Court Should Deny Defendants' Motion to Dismiss. ................................... 4

       A.   The Plaintiffs Have Standing to Receive Injunctive Relief as Individual Plaintiffs and as Class Representatives. .................................................................. 4

          *i.*   *The Individual Class Representatives Have Alleged Concrete Injuries* ...................... 5

          *ii.*   *The Individual Class Representatives Have Shown a Likelihood That They Will Be Harmed in the Future.* ................................................................................. 6

       B.   Plaintiffs Have Adequately Alleged Their Federal Claims Challenging Defendants' Municipal Policies and Practices Governing the Database. ............................................. 9

       C.   Plaintiffs' State Law Claims Fall Under the Public Interest and Equitable Relief Exceptions to the Notice of Claim Requirement. ......................................... 14

       D.   Plaintiffs Plausibly Allege Individual Defendants' Involvement in their Official Capacities. ................................................................................................. 15

    II.   The Court Should Grant Plaintiffs' Motion for Class Certification. ................................ 16

       A.   Rule 23(b)(2) Does Not Require "Ascertainability," Which the Proposed Class Nonetheless Satisfies. ......................................................................................... 17

       B.   Determining Class Membership Will Not Require Individualized Factual Inquiries. ... 19

    III.   The Court Should Grant Plaintiffs' Motion to Proceed Anonymously. ........................... 21

    IV.   Defendants Have Not Demonstrated Good Cause to Warrant a Stay of Discovery.......... 25

CONCLUSION ................................................................................................................ 27

LOCAL CIVIL RULE 7.1 CERTIFICATION ............................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Clapper*,
   785 F.3d 787 (2d Cir. 2015).................................................................................6

*Ad Hoc Comm. of Concerned Teachers v. Greenburgh #11 Union Free Sch. Dist.*,
   873 F.2d 25 (2d Cir. 1989)..................................................................................7

*Amnesty Am. v. Town of W. Hartford*,
   361 F.3d 113 (2d Cir. 2004)...............................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................3

*Baur v. Veneman*,
   352 F.3d 625 (2d Cir. 2003)................................................................................5

*Bertuglia v. City of New York*,
   839 F. Supp. 2d 703 (S.D.N.Y. 2012).................................................................11

*Brown v. Sega Amusements, U.S.A., Inc.*,
   No. 13 Civ. 7558, 2015 WL 1062409 (S.D.N.Y .Mar. 9, 2015) ...........................18

*Burley v. City of New York*,
   No. 03 Civ. 735, 2005 WL 668789 (S.D.N.Y. Mar. 23, 2005) ..............................18

*Capellan v. City of New York*,
   No. 20 CV 867, 2020 WL 13904618 (E.D.N.Y. Sept. 17, 2020) .....................25, 26

*CASA Inc., v. Trump*,
   Civ. No. 25-201, 2025 WL 2263001 (D. Md. Aug. 7, 2025) .................................23

*Deshawn E. ex rel. Charlotte E. v. Safir*,
   156 F.3d 340 (2d Cir. 1998)...............................................................................4, 6

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)..............................................................................................8

*Daniels v. City of New York*,
   198 F.R.D. 409 (S.D.N.Y. 2001) .........................................................................19

*Dodge v. Cnty. of Orange*,
   208 F.R.D. 79 (S.D.N.Y. 2002) ...........................................................................19

iii

*Doe 1 v. Branca USA, Inc.*,
　No. 22-CV-3806, 2022 WL 2713543 (S.D.N.Y. July 13, 2022) ....................................21

*Doe No. 1 v. Putnam Cnty.*,
　344 F. Supp. 3d 518 (S.D.N.Y. 2018) ...............................................................................5, 7

*Doe v. City of New York*,
　201 F.R.D. 100 (S.D.N.Y. 2001) ........................................................................................22

*Doe v. Leonelli*,
　No. 22 CV 3732, 2022 WL 2003635 (S.D.N.Y. June 6, 2022) ...........................................21

*Doe v. N.Y.C. Hous. Auth.*,
　No. 22-cv-4460, 2022 WL 2072570 (S.D.N.Y. June 9, 2022) ............................................23

*Doe v. Skyline Auto. Inc.*,
　375 F. Supp. 3d 401 (S.D.N.Y. 2019) .................................................................................21

*Doe v. Townes*,
　No. 19-cv-8034, 2020 WL 2395159 (S.D.N.Y. May 12, 2020) .........................................23

*Doe v. United States*,
　No. 16-cv-7256, 2017 WL 2389701 (S.D.N.Y. June 1, 2017) ...........................................22

*Doe v. Weinstein*,
　484 F. Supp. 3d 90 (S.D.N.Y. 2020) ..................................................................................21

*Does v. City of Indianapolis*,
　No. 1:06-cv-865, 2006 WL 2289187 (S.D. Ind. Aug. 7, 2006) .........................................24

*Dutcher v. Town of Shandaken*,
　470 N.Y.S.2d 767 (N.Y. App. Div. 1983) ..........................................................................14

*Edwards v. City of New York*,
　No. 14-CV-10058, 2015 WL 5052637 (S.D.N.Y. Aug. 27, 2015) .....................................13

*Eisen v. Carlisle & Jacquelin*,
　417 U.S. 156 (1974) .............................................................................................................4

*Floyd v. City of New York*,
　283 F.R.D. 153 (S.D.N.Y. 2012) ................................................................................ *passim*

*Floyd v. City of New York*,
　959 F. Supp. 2d 540 (S.D.N.Y. 2013) ................................................................................25

*Marisol A. ex rel. Forbes v. Giuliani*,
　126 F.3d 372 (2d Cir. 1997) ...............................................................................................21

*Free Speech v. Reno*,
No. 98 Civ. 2680, 1999 WL 47310 (S.D.N.Y. Feb. 1, 1999) .................................................22

*Kadel v. Folwell*,
100 F.4th 122 (4th Cir. 2024), *judgment vacated on other grounds*, 145 S.Ct.
2838 (2025) ...............................................................................................................................17

*Kunstler v. Cent. Intel. Agency*,
No. 22-CV-6913, 2023 WL 8776339 (S.D.N.Y. Dec. 19, 2023), *appeal
dismissed* (2d. Cir. May 23, 2025) ...........................................................................................6

*Lawson v. Rubin*,
No. 17 CV 6404 (BMC), 2018 WL 4211446 (E.D.N.Y. Mar. 7, 2018)................................25

*Lozano v. City of Hazleton*,
496 F. Supp. 2d 477 (M.D. Pa. 2007), *rev'd in part on other grounds,* 724
F.3d 297 (3d Cir. 2013)............................................................................................................22

*Lucente v. Cnty. of Suffolk*,
980 F.3d 284 (2d Cir. 2020).....................................................................................................10

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................................................................................................................4

*MacNamara v. City of New York*,
275 F.R.D. 125 (S.D.N.Y 2011) ................................................................................................8

*McMillian v. Monroe Cnty.*,
520 U.S. 781 (1997)..................................................................................................................15

*Monell v. Department of Social Services*,
436 U.S. 658 (1978)..................................................................................................2, 12, 13, 15

*Moore v. PaineWebber, Inc.*,
306 F.3d 1247 (2d Cir. 2002)...................................................................................................19

*Murphy v. City of New York*,
719 F. Supp. 3d 357 (S.D.N.Y. 2024)................................................................................11, 12

*In re N.Y.C. Policing During Summer 2020 Demonstrations*,
548 F. Supp. 3d 383 (S.D.N.Y. 2021)........................................................................................8

*National Congress for Puerto Rican Rights v. City of New York*,
75 F. Supp. 2d 154 (S.D.N.Y.), *on reconsideration in part*, 191 F.R.D. 52
(S.D.N.Y. 1999) ..........................................................................................................................9

*Nestle Waters N. Am., Inc. v. City of New York*,
15-cv-05189, 2016 WL 3080722 (S.D.N.Y. May 25, 2016) ......................................................4

*Okin v. Vill. of Cornwall-On-Hudson Police Dep't,*
 577 F.3d 415 (2d Cir. 2009)...........................................................................10

*Patterson v. Cnty. of Oneida,*
 375 F.3d 206 (2d Cir. 2004)...........................................................................11

*People United for Child., Inc. v. City of New York,*
 108 F. Supp. 2d 275 (S.D.N.Y. 2000).............................................................14

*In re Petrobras Sec.,*
 862 F.3d 250 (2d Cir. 2017)......................................................................17, 19

*Plaintiffs # 1-21 v. Cnty. of Suffolk,*
 138 F. Supp. 3d 264 (E.D.N.Y. 2015) .......................................................23, 26

*Rapp v. Fowler,*
 537 F. Supp. 3d 521(S.D.N.Y. 2021)..............................................................21

*Republic of Turkey v. Christie's,*
 316 F. Supp. 3d 675 (S.D.N.Y. 2018).............................................................25

*Reynolds v. Giuliani,*
 506 F.3d 183 (2d Cir. 2007)...........................................................................12

*Roe v. City of New York,*
 151 F. Supp. 2d 495 (S.D.N.Y. 2001)...............................................................9

*Roth v. Jennings,*
 489 F.3d 499 (2d Cir. 2007).............................................................................3

*Scaggs v. N.Y. State Dep't of Educ.,*
 No. 06-CV-799, 2007 WL 1456221 (E.D.N.Y. May 16, 2007) ............................14

*Sealed Plaintiff v. Sealed Defendant #1,*
 537 F.3d 185 (2d Cir. 2008).......................................................................21, 25

*Shain v. Ellison,*
 356 F.3d 211 (2d Cir. 2004).............................................................................8

*Shelton v. Bledsoe,*
 775 F.3d 554 (3d Cir. 2015)...........................................................................18

*Stinson v. City of New York,*
 282 F.R.D. 360 (S.D.N.Y. 2012) ..................................................................8, 25

*Tanvir v. Tanzin,*
 894 F.3d 449 (2d Cir. 2018), *aff'd*, 592 U.S. 43 (2020) .....................................15

*Tieman v. City of Newburgh,*
No. 13-CV-4178, 2015 WL 1379652 (S.D.N.Y. Mar. 26, 2015) ...........................13

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021) ...................................................................................................5

*Vann v. City of New York,*
72 F.3d 1040 (2d Cir. 1995) .....................................................................................12

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) ............................................................................................17, 20

## Other Authorities

Fed. R. Civ. P. 23(b)(2) ................................................................................... *passim*

Fed. R. Civ. P. 23(b)(3) ..................................................................................17, 18, 19

Groups Urge NYPD Inspector General to Audit the NYPD "Gang Database,"
HUM. RTS.WATCH (Sep. 22, 2020) ...........................................................................22

Ryan Devereaux & John Knefel, *ICE Evades Sanctuary Rules by Using NYPD Fingerprints to Find Immigrants and Send Them Call-In Letters*, THE INTERCEPT (Apr. 26, 2018) ......................................................................................22

## PRELIMINARY STATEMENT

Over a decade ago, Defendants created a Database to label and track thousands of Black and Latino New Yorkers based on their race, relationships, and speech—all under the guise of their purported membership in "criminal groups," "gangs," or "crews." Defendants adopted vague policies with expansive and standardless criteria for who should be labeled and tracked in the Database, trained their officers to apply these criteria differently based on race, and directed officers to surveil, stop, and extend the detention of any person on the Database to interrogate that person about unrelated crimes and people.

Plaintiffs "Adam," "Bryan," and "Chris" are three of the thousands of Black and Latino New Yorkers who have been subjected to, and harmed by, these Database policies. Defendants labeled these young men as "gang" members based on vague and racially discriminatory criteria, surveilled them online and in their communities, and stopped, detained, and interrogated them numerous times.

Because of Defendants' Database policies, Adam, Bryan, and Chris have been forced to change their lives and modify their behavior by distancing themselves from family, curbing their online speech, and even limiting the time they spend with their kids on local playgrounds. In bringing this case, they do not seek to litigate whether "gangs" are real or whether any person in New York City is a "gang" member. Rather, they challenge Defendants' policies for creating, maintaining, and enforcing the Database, all of which violate their First, Fourth, and Fourteenth Amendment rights, as well as other state constitutional and statutory rights.

Defendants concede that Plaintiffs' extensive factual allegations plausibly allege nearly all their claims. They do not address the staggering racial disparities in their Database, their knowledge of these disparities, or other evidence of intentional discrimination. Instead, to win

1

dismissal, Defendants attempt to recast and narrow Plaintiffs' claims, suggesting, for example, that Plaintiffs challenge only pretextual stops, rather than the creation and use of a municipally sanctioned, racially discriminatory surveillance program.

When viewing the allegations in their entirety, however, none of Defendants' underdeveloped arguments for dismissal of specific claims or defendants have merit.

*First*, contrary to Defendants' assertions, Plaintiffs have sufficiently alleged their standing to seek injunctive relief on behalf of themselves and the putative class. The ongoing injuries Plaintiffs have suffered from the Database—different treatment on the basis of race, the inability to express themselves or associate freely, frequent and prolonged stops and interrogations—are not speculative.

*Second*, Plaintiffs adequately alleged that Defendants are liable for their unlawful municipal policies under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The Complaint details official policies and widespread practices for creating, maintaining, and enforcing the Database. It describes the flawed training program and continued failure to take corrective steps following myriad complaints, making Defendants liable under failure to train, supervise, and discipline theories.

*Third*, Plaintiffs were excused from the Notice of Claim requirement for their state law claims under the public interest and equitable relief exceptions.

*Finally*, the individual defendants should not be dismissed: they are sued in their *official* capacities, and allegations of their personal involvement are unnecessary. The Court should deny Defendants' motion to dismiss in its entirety. Because their motion is baseless, Defendants have failed to meet their burden to stay discovery pending resolution of their motion to dismiss.

Similarly, Defendants' arguments opposing Plaintiffs' motions to certify a class and to proceed anonymously are unpersuasive. Defendants attempt to import Federal Rules of Civil Procedure ("Rule") 23(b)(3)'s requirements for a class seeking damages into this Rule 23(b)(2) class seeking injunctive relief, but courts have consistently rejected similar attempts. Moreover, Defendants' opposition to Plaintiffs' request to shield their identity publicly ignores guidance from Second Circuit precedent that proceeding anonymously is appropriate where—as here—Plaintiffs' challenge to government actions causes them and their loved ones to fear for their safety and security. The Court should grant Plaintiffs' motions.

## STANDARD OF REVIEW

When reviewing a motion to dismiss, courts "must accept as true all of the factual allegations set out in [a] plaintiff's complaint, draw inferences from those allegations in the light most favorable to the plaintiff, and construe the complaint liberally." *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007) (internal citation omitted). The motion must be denied if the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[1]

---

[1] In their opening briefs, Plaintiffs set forth the relevant governing standards for their motion to proceed anonymously and motion for class certification. *See* ECF No. 2-1, at 15-17; ECF No. 3-1, at 11.

**ARGUMENT**

I.     **The Court Should Deny Defendants' Motion to Dismiss.**

    **A.  The Plaintiffs Have Standing to Receive Injunctive Relief as Individual Plaintiffs and as Class Representatives.**

Plaintiffs have pled *imminent* and *ongoing* injuries for injunctive standing that Defendants wrongly dismiss as "[highly] speculative" or "based on conjecture." Defs. Mot. to Dismiss & in Opp. to Mots. for Class Certification and Anonymity ("Defs. Br.") 6, 13, ECF No. 34.[2]

To establish standing, a plaintiff must demonstrate: (1) "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," (2) that is fairly traceable to the challenged action of the defendant, and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up). For injunctive standing, a plaintiff must show "a likelihood that he or she will be injured in the future." *Deshawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998). In actions seeking injunctive relief through a class, "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Floyd v. City of New York*, 283 F.R.D. 153, 169 & n.97 (S.D.N.Y. 2012) (citing *Rumsfeld v. F. for Acad. and Inst. Rts., Inc.*, 547 U.S. 47, 53 n.2 (2006)). "[A]t the pleading stage, standing allegations need not be crafted with precise detail, nor

---

[2] Defendants also wrongly seek Rule 12(b)(6) dismissal because Plaintiffs supposedly have not pled individual claims beyond class allegations. Defs. Br. 12. But "[c]lass certification is a procedural question, distinct from merits of a case." *Nestle Waters N. Am., Inc. v. City of New York*, 15-cv-05189, 2016 WL 3080722, at *5 (S.D.N.Y. May 25, 2016). "In determining the propriety of a class action, the question is not whether the . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). To the extent Defendants contend Plaintiffs have not pled any individual claims, they are wrong. The individual plaintiffs bring all claims "on behalf *of themselves*" and on behalf of "a class of similarly situated individuals." Compl. ¶ 18 (emphasis added); *see also id.* ¶ 408 ("Plaintiffs 1-3 bring this action on their own behalf and, pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. . . ."). Indeed, Defendants' argument is undermined by the first footnote of their brief, where they recognize that the Individual Class Representatives seek damages "*in their individual capacities.*" Defs. Br. 3 n.1 (emphasis added).

must the plaintiff prove his allegations of injury." *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003) (citing *Lujan*, 504 U.S. at 561).

Here, Defendants challenge only whether Plaintiffs alleged concrete and non-speculative future injuries to merit injunctive standing.

> *i.*     *The Individual Class Representatives Have Alleged Concrete Injuries.*

Plaintiffs have alleged injuries-in-fact sufficient to confer standing to win injunctive relief on each of their claims and for the putative class. Plaintiffs alleged that: (1) Defendants labeled Plaintiffs gang members and added them to the Database—intentionally designed to be racially discriminatory—because of their race, and then enforced the accompanying surveillance, detention, and interrogation policies against them, *see* Compl. ¶¶ 112-387, (2) Defendants labeled Plaintiffs gang members and added them to the Database on the basis of policies that are so vague as to permit discriminatory and arbitrary enforcement and deny the public—including Plaintiffs— sufficient notice, *see id.* ¶¶ 42-154, 261-387, (3) Defendants' Database policies infringed on constitutionally-protected expressive activity and associations, *see id.* ¶¶ 65-154, 180-245, 261-387, and (4) Defendants directed officers to prolong Plaintiffs' detentions, in otherwise routine traffic stops and short encounters, and to question them about purported "gang" activity, *see id.* ¶¶ 206-221, 261-387. Plaintiffs have alleged both traditional harms, such as detention, and the sorts of "intangible harms," such as the collection and maintenance of information based on racially discriminatory criteria, that the Supreme Court recognized "can also be concrete," particularly when they "include harms specified by the Constitution itself." *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *see also Doe No. 1 v. Putnam Cnty.*, 344 F. Supp. 3d 518,

529 (S.D.N.Y. 2018) (noting plaintiff has standing on basis of "direct constitutional injury" where State maintained information of his name, address, and status as a handgun permit holder).

> ii.   *The Individual Class Representatives Have Shown a Likelihood That They Will Be Harmed in the Future.*

The constitutional violations experienced by people in the Database, including Plaintiffs, are ongoing and systemic in nature, rendering the likelihood of future injuries here nonspeculative. In *ACLU v. Clapper*, plaintiffs challenged a federal surveillance program that involved the bulk collection of telephone metadata. 785 F.3d 787, 793-94 (2d Cir. 2015). In recognizing a concrete and imminent injury, the Second Circuit found it irrelevant that the plaintiffs could not show that their metadata had been or would be reviewed by the government. *Id*. at 801. Rather, the Circuit reasoned that the plaintiffs "challenge[d] the telephone metadata program as a whole." *Id*. It noted: "[w]hether or not such claims prevail on the merits, [plaintiffs] surely have standing to allege injury *from the collection, and maintenance in a government database, of records relating to them.*" *Id*. (emphasis added). Similarly, Plaintiffs challenge the constitutionality of the entire Database (including the storage of personal information in it), as shown by the well-pled allegations that its criteria were devised with racially discriminatory motivations.

Plaintiffs have further alleged that, pursuant to official NYPD policy, Defendants unconstitutionally constructed a Database to collect and catalog Plaintiffs' personal information. The NYPD then used and continues to use that information to surveil, stop, and interrogate Plaintiffs continuously. Because of the collection and ongoing maintenance and use of that data, Plaintiffs have standing for injunctive relief. *See Deshawn E.*, 156 F.3d at 344 ("[U]nlike *Lyons*, the plaintiffs in this case allegedly continue to suffer harm from the challenged conduct because the information secured by the Squad is used to enhance their cases and to obtain plea bargains." (citation omitted)); *Kunstler v. Cent. Intel. Agency*, No. 22-CV-6913, 2023 WL 8776339, at *6

(S.D.N.Y. Dec. 19, 2023), *appeal dismissed* (2d. Cir. May 23, 2025) (noting standing for injunctive relief "arose when the alleged constitutional violation occurred and does not rely on a showing that the Government will use the information collected."); *Doe No. 1*, 344 F. Supp. 3d at 529 ("Doe No. 1 has alleged his information has been collected—not that it merely could be collected—and that it is at risk of being released publicly should anyone ask. Such a claim does not rely on the multi-step 'speculative chain of possibilities' rejected by the Supreme Court in [*Clapper v. Amnesty International*].").

To support their contention that Plaintiffs' alleged future harms are "highly speculative," Defs. Br. 6, Defendants reframe those harms entirely. Defendants mischaracterize Plaintiffs' claims when they argue that future injuries would (1) require asserting that gangs do not exist, (2) require that *every* member of the injunctive class be aware that they were added to the Database, and (3) require any actionable injuries to be baseless detentions and arrests exclusively. *Id.* But Plaintiffs are not litigating whether "gangs" are real, and they have been harmed by more than detentions or stops. Defendants' framing ignores the harm that flows from the racially discriminatory and unconstitutionally vague criteria the NYPD uses to label people as gang members. As the Second Circuit noted: when a plaintiff is "asserting [his or her] own [equality] right," a claim of discrimination—even if it affects a broad class—"is not an abstract concern or generalized grievance." *Ad Hoc Comm. of Concerned Teachers v. Greenburgh #11 Union Free Sch. Dist.*, 873 F.2d 25, 29 (2d Cir. 1989) (cleaned up). Critically, Defendants provide no explanation or authority to support why the first two contentions—whether some class members are "gang members" and whether class members know they have been added to the Database—would have any bearing on standing to challenge Defendants' behavior of relying on, *inter alia*, racially discriminatory methods and tools to devise a list of "gang members."

Defendants improperly rely on *City of Los Angeles v. Lyons* and *Shain v. Ellison* to support their assertion that Plaintiffs lack standing for injunctive relief. But, even as they relate to Plaintiffs' claims regarding detention, these cases are inapposite. Plaintiffs in those cases sought to enjoin the defendants' use of chokeholds (*Lyons*) and strip searches (*Shain*) after a *single, discrete encounter*. In both, the courts held that an isolated incident with law enforcement does not alone confirm that the harm is likely to recur. *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983) (noting no further police encounter between incident and filing of lawsuit); *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (same). The district court cases cited by Defendants are similarly distinguishable because the respective plaintiffs alleged a single encounter with law enforcement. *See* Defs. Br. 5 (citing *McLennon v. City of New York*, 171 F. Supp. 3d 69 (E.D.N.Y. 2016), and *MacIssac v. Town of Poughkeepsie*, 770 F. Supp. 2d 587 (S.D.N.Y 2011)); *cf. Floyd*, 283 F.R.D. at 169-70 (citation omitted) ("The possibility of recurring injury ceases to be speculative when actual repeated incidents are documented."); *Stinson v. City of New York*, 282 F.R.D. 360, 382 (S.D.N.Y. 2012) ("[T]he fact that several Plaintiffs in this case have received multiple summonses alleged to have been issued without probable cause suggests the potential for future harm to rise above the speculative level.").[3]

---

[3] Defendants also cite *MacNamara v. City of New York*, 275 F.R.D. 125 (S.D.N.Y 2011), but that case was dismissed essentially due to a drafting error. Defs. Br. 5-6, 13. There, Plaintiffs alleged only that they "*may* participate in future demonstrations of unspecified date, duration, or scope," which caused the court to find the chain of inferences too speculative in light of the allegations. 275 F.R.D. at 141 (emphasis in original). In litigation brought after the demonstrations in summer 2020, however, a district court found standing because plaintiffs "alleged that they *will* continue to participate in protests throughout the City," noting "allegations of repeated unlawful conduct" and a "sheer volume of violations alleged by [p]laintiffs." *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d 383, 396-97 (S.D.N.Y. 2021) (emphasis added). Plaintiffs here allege being subject to prolonged detention for merely "going about [their] daily life," which they will continue to do. *See* Compl. ¶¶ 261-387; s*ee also Floyd*, 283 F.R.D at 170 ("The risk of injury is not based on a string of unlikely contingencies: according to his sworn affidavit, [named plaintiff] was stopped and frisked while going about his daily life—walking down the sidewalk, sitting on a bench, getting into a car.").

In contrast, Plaintiffs have alleged, *inter alia*, (1) a widespread practice of prolonged detentions, (2) that is pursuant to an official policy, and (3) that has both targeted them previously and *continues to target them* as members of a special population. Compl. ¶¶ 173-245, 261-387. Plaintiffs allege that Defendants detain people on the Database for excessively lengthy periods of time pursuant to official policy. *Id*. ¶¶ 230-245. Defendants also target people on the Database for pretextual and disparate enforcement of low-level infractions. *Id*. ¶¶ 206-209, 230.

Thus, unlike plaintiffs in *Shain* and *Lyons*, Individual Class Representatives allege a pattern of detentions pursuant to an official policy targeting them individually. "Courts have repeatedly found that plaintiffs who are members of such an identifiable class of targeted individuals have standing to sue" for injunctive relief. *Roe v. City of New York*, 151 F. Supp. 2d 495, 504 (S.D.N.Y. 2001). As noted in *National Congress for Puerto Rican Rights v. City of New York*, "[c]ourts have not been hesitant to grant standing to sue for injunctive relief where numerous constitutional violations have resulted from a policy of unconstitutional practices by law enforcement officers." 75 F. Supp. 2d 154, 161 (S.D.N.Y.), *on reconsideration in part*, 191 F.R.D. 52 (S.D.N.Y. 1999).

Defendants' unlawful policies caused and will continue to cause Plaintiffs concrete and nonspeculative injuries unless enjoined. Plaintiffs have standing to seek equitable relief for themselves and for the putative class.

### B. Plaintiffs Have Adequately Alleged Their Federal Claims Challenging Defendants' Municipal Policies and Practices Governing the Database.

Defendants argue that Plaintiffs failed to allege municipal policies or practices that discriminate against Black and Latino New Yorkers and that they failed to allege factual details supporting a failure to train claim. Defs. Br. 13-14. These arguments are baseless because Defendants ignore the dozens of factual allegations that contradict them.

Plaintiffs sufficiently alleged that Defendants' municipal policies and/or practices have caused each of the federal constitutional violations alleged in this case. To plausibly allege municipal liability under Section 1983, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (citation omitted). Where plaintiffs allege a discriminatory policy or practice, it is sufficient to show, for example, that a discriminatory practice of municipal officials "was so 'persistent or widespread' as to constitute 'a custom or usage with the force of law,'" *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 439 (2d Cir. 2009), or that a discriminatory practice of subordinate employees was "so manifest as to imply the constructive acquiescence of senior policy-making officials," *Lucente*, 980 F.3d at 297 (both cases quoting *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d, 864, 870-71 (2d Cir. 1992)).

Defendants baldly assert that "[P]laintiffs have not, and cannot, identify any current municipal policy or practice of entering Black and Hispanic individuals into the Database to the exclusion of white individuals." Defs. Br. 13. But the Complaint plainly outlines the NYPD's policies, practices, and/or customs of targeting Plaintiffs and the putative class, at least in part, on their race, ethnicity, and/or national origin for inclusion in the Database, *see* Compl. ¶¶ 42-154, as well as the NYPD's policies, practices, and/or customs of enforcing the Database, including through surveillance and unequal policing of low-level infractions, *id.* ¶¶ 173-260.

Plaintiffs provide detailed and specific allegations about the challenged policies and practices. *See generally* Compl. ¶¶ 42-111, 140-154, 173-260. For example, they describe Defendants' policy for determining who should be added to the Database, *see id.* ¶¶ 42-111, and Defendants' Detention and Interrogation policy, *see id.* ¶ 176; *see also id.* ¶¶ 222-245. Plaintiffs

also specifically allege that Defendants have been implementing their Database policies and practices over a period of at least twelve years, *id.* ¶ 29, which implicates the policing of "approximately 10,000 uniformed officers," *id.* ¶ 225, and has impacted as many as 45,000 people, *id.* ¶ 36. Defendants point to no cases where similarly detailed allegations of a municipal policy or practice were dismissed for failure to state a claim. Defs. Br. 13-14; *see, e.g., Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 738 (S.D.N.Y. 2012) (fifteen cases sufficient to allege a pattern or practice).

Plaintiffs not only allege that the NYPD's written policy protocols for the Database are unconstitutional and discriminatory, but also that the NYPD has a policy and practice of selectively enforcing those discriminatory criteria. *See* Compl. ¶¶ 4, 45, 112-118. Plaintiffs buttress those allegations with citations to third-party accounts, *see id.* ¶¶ 200, 388-396, publicly-released Impact and Use Policies for the Database, *id.* ¶¶ 42-111, and written training documents used to instruct officers on Department policy, *id.* ¶¶ 140-154. Courts have found that allegations of the NYPD's selective enforcement against Black and Latino people satisfy the pleading requirements to establish municipal liability at this early stage of litigation, especially when third-party reporting corroborates the allegations. *See, e.g., Murphy v. City of New York*, 719 F. Supp. 3d 357, 373 (S.D.N.Y. 2024) (finding plaintiff sufficiently pled municipal liability, in part, because he "illustrate[d] his claims with contemporaneous news articles and social media posts.").

Defendants' arguments that Plaintiffs inadequately alleged a failure to train claim are similarly unavailing. "A policy, custom, or practice may also be inferred when 'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citation omitted). To establish deliberate indifference, the Second Circuit

> require[s] the plaintiff to show: (1) that a policymaker knows to a moral certainty that her employees will confront a given situation; (2) that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights.

*Okin*, 577 F.3d at 440 (internal citations omitted).

Notwithstanding the Second Circuit's acknowledgment that "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage," *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004), Plaintiffs described in detail the NYPD's flawed training program that they challenge. *See* Compl. ¶¶ 140-154. Plaintiffs' allegations also detail NYPD public testimony, provided over multiple years, demonstrating the NYPD's awareness of complaints about the racial disparities in the Database, complaints that the NYPD's practices of selective enforcement directly caused those disparities, and the NYPD's failure to address those complaints. *See* Compl. ¶¶ 100, 120-133, 388-407; *see Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) ("[D]eliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents."). Defendants provide no legitimate basis why such detailed allegations do not adequately plead a failure to train claim.[4]

Plaintiffs also allege that the Database policies and practices are a direct outgrowth of the NYPD's Stop and Frisk policies, for which a federal court has already found *Monell* liability against the City. *See* Compl. ¶¶ 5, 29-32, 162-245. Courts in the Second Circuit have found similar

---

[4] By making only a passing reference to failure to discipline or supervise, Defendants have not properly raised any arguments about the adequacy of Plaintiffs' pleading of these theories of *Monell* liability. *See* Defs. Br. 14. In any event, Plaintiffs' factual allegations that establish the elements of a failure to train claim, including factual allegations that establish Defendants' deliberate indifference—myriad complaints constituting notice and the subsequent NYPD inaction and failure to remediate—also support Plaintiffs' failure to supervise and discipline theories of *Monell* liability. *See* Compl. ¶¶ 42-111, 388-407; *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (recognizing that deliberate indifference standard applies to failure to train, supervise, and discipline claims).

allegations more than sufficient to "plausibl[y] infer[]" that the elements of a failure to train *Monell* claim were met. *Murphy*, 719 F. Supp. 3d at 374; *see also id.* (noting that plaintiff sufficiently alleged that "the City knew to a moral certainty" that the NYPD may engage in racial profiling, based on allegations citing "the history of particularly problematic policing around public housing and against Black and Latinx individuals") (internal citation omitted); *Edwards v. City of New York*, No. 14-CV-10058, 2015 WL 5052637, at *6 (S.D.N.Y. Aug. 27, 2015) (noting the "[p]laintiff's cited government reports, news articles, and eighteen prior lawsuits plausibly demonstrate that policymakers knew to a moral certainty that DOC officers routinely confront situations in which detainees provoke them and that there is a history of DOC officers mishandling such situations by responding with excessive force").

Contrary to Defendants' assertions, Plaintiffs' allegations bear no relationship to the conclusory failure-to-train allegations in *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *22 (S.D.N.Y. Mar. 26, 2015), the sole case cited by Defendants. There, the operative complaint provided no factual allegations about the allegedly deficient training program and instead relied exclusively on the fact that less than half the officers (43%) who responded to a poll reported that they had received appropriate training. *Id.* at *16.

If the Court finds that Plaintiffs have adequately pled any of the paths to *Monell* liability—written policy, widespread practice, failure to train, or any other articulation—the Plaintiffs should be able to proceed with all of their federal constitutional claims. Finally, because Defendants challenge no other elements of Plaintiffs' federal claims outside of the issue of *Monell* liability, thus waiving those arguments, the Court should deny Defendants' motion to dismiss these claims.

### C. Plaintiffs' State Law Claims Fall Under the Public Interest and Equitable Relief Exceptions to the Notice of Claim Requirement.

Defendants argue that Plaintiffs' state law claims should be dismissed because they did not comply with New York State's Notice of Claim requirement. Defs. Br. 14-16. This argument fails because Plaintiffs' claims fall under two exceptions to the requirement.

*First*, Plaintiffs satisfy the public interest exception to the notice requirement. The New York Court of Appeals recognizes this exception for actions (1) that protect an important right, (2) that seek relief for a similarly situated class of the public, and (3) whose resolution would directly affect the rights of that class or group. *Scaggs v. N.Y. State Dep't of Educ.*, No. 06-CV-799, 2007 WL 1456221, at *20 (E.D.N.Y. May 16, 2007) (quoting *Mills v. Cnty. of Monroe*, 451 N.E.2d 456, 458 (NY 1983)). Plaintiffs' state law claims squarely fall under this exception. Plaintiffs brought this case to vindicate a broad range of rights of Black and Latino New Yorkers under the New York Constitution and Administrative Code. Compl. ¶¶ 1, 426-427, 433-436, 442-443, 444-446. Plaintiffs also sought to certify a class at the very beginning of this case. *See id.* ¶¶ 408-410; Pls.' Notice of Mot. to Certify Class, ECF No. 3. Finally, the relief sought by Plaintiffs—an order declaring the Database unconstitutional and permanently enjoining its use—would protect members of the putative class from future harassment. Compl. 105 ¶¶ a-c. The public interest exception applies to Plaintiffs' state law claims.

*Second*, Plaintiffs also qualify for the equitable relief exception. "New York courts have recognized that the notice-of-claims statute does not apply where the primary relief being sought is equitable in nature, and monetary damages are only incidental." *People United for Child., Inc. v. City of New York*, 108 F. Supp. 2d 275, 301 (S.D.N.Y. 2000); *see also Dutcher v. Town of Shandaken,* 470 N.Y.S.2d 767 (N.Y. App. Div. 1983) ("[I]t is well settled that a notice of claim is

not required for an action brought in equity against a municipality where the demand for money damages is incidental and subordinate to the requested injunctive relief.").

Here, Plaintiffs primarily seek declaratory and injunctive relief to "end [NYPD's] unconstitutional practice of disparately criminalizing and targeting tens of thousands of Black and Latino New Yorkers by placing their names in the Department's Criminal Group Database . . . ." Compl. ¶ 1. While Individual Class Representatives seek damages for their own individual injuries, these damages are subordinate to Plaintiffs' larger goal—enjoining a Database that houses the names and information of at least 26,000 New Yorkers, including their own. *Id*. ¶¶ 409(a). The class seeks no damages. Because Plaintiffs' complaint primarily seeks equitable relief, this exception applies.

### D. Plaintiffs Plausibly Allege Individual Defendants' Involvement in their Official Capacities.

Defendants next argue that Plaintiffs' claims against Defendants Tisch, Kenny, and Hart ("Individual Defendants") should fail because Plaintiffs did not allege their *personal* involvement. Defs. Br. 10-11. This argument is meritless. Tisch, Kenny, and Hart are sued in their *official* capacities. Compl. ¶¶ 23-25. As such, Plaintiffs did not need to allege their personal involvement in the alleged constitutional violations.

Plaintiffs plausibly alleged claims against Individual Defendants as final policymakers under *Monell*. When suing individuals in their official capacity, "the real party in interest . . . is the governmental entity and not the named official." *Tanvir v. Tanzin*, 894 F.3d 449, 459 (2d Cir. 2018), *aff'd*, 592 U.S. 43 (2020) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

Here, Plaintiffs allege that Individual Defendants "are final policymakers for the local government in a particular area, or on a particular issue." *See McMillian v. Monroe Cnty*., 520 U.S. 781, 785-86 (1997). Specifically, Tisch is sued in her role as Police Commissioner and is alleged

to have final policymaking authority with respect to the NYPD. Compl. ¶ 23. Plaintiffs' Complaint is replete with allegations about how the policies and widespread practices regarding the NYPD Database contribute to the alleged constitutional violations. *See supra* Section I(B). Kenny is sued in his role as Chief of Detectives and is alleged to have managed and set policy for the NYPD's Detective Bureau, its specialized divisions, and the Real Time Crime Center ("RTCC"). Compl. ¶ 24. Plaintiffs provided detailed allegations regarding the role that gang squad detectives and the RTCC play in violating the rights of Plaintiffs and putative class members. *See id.* ¶¶ 32, 183-188, 241, 285-286, 343-345. Hart is sued in his capacity as Assistant Chief of the Intelligence Bureau and is alleged to manage and set policy for the NYPD's Intelligence Bureau and its Field Intelligence Officer Program. *Id.* ¶ 25. Plaintiffs allege how the Intelligence Bureau manages and sets policy for the Field Intelligence Officer program, collects information on "criminal groups," and recommends people for entry into the Database, which officers and detectives then use to target people for surveillance, harassment, and detention. *See id.* ¶¶ 30, 62, 105, 194-196, 231, 237. Plaintiffs have plausibly pled that Individuals Defendants are liable in their official capacity.

## II.     The Court Should Grant Plaintiffs' Motion for Class Certification.

Alongside the Complaint, Plaintiffs filed a motion for class certification. ECF No. 3.[5] Although Defendants now oppose certification, they do not contest that Plaintiffs satisfied the requirements for a class set forth in Rule 23(a): they do not dispute (and therefore concede) that the putative class satisfies the numerosity, commonality, typicality, and adequacy requirements for a class. *See* Defs. Br. 3-10; *see also* Pls.' Mem. Law Supp. Mot. For Class Certification, ECF No. 3-1, at 12-18 (explaining that putative class satisfies these prerequisites for certification).

---

[5] Contrary to Defendants' assertion, *see* Defs. Br. 2, Plaintiffs properly served both the motion for class certification and motion to proceed anonymously. Regardless, Defendants have not argued that the motions should be dismissed for improper service and have instead responded to the merits of those motions. Defs. Br. 3-10, 16-23.

Defendants instead argue that certification is inappropriate because Plaintiffs lack standing for prospective, injunctive relief. *See* Defs. Br. 3-7. But as Plaintiffs explained above, they sufficiently pled standing because the likelihood of future harm from Defendants' challenged policies is not speculative. *See supra* Section I(A).

Defendants raise two additional objections to class certification. *First*, they argue that the proposed class definition does not satisfy the "implicit requirement" that all classes be "definite" or "ascertainable." Defs. Br. 7-8. *Second*, they contend that determining class membership would require individualized factual inquiries. *Id*. Defendants conflate the requirements of different types of class certification: both of their arguments rely on caselaw that primarily concerns certification of a class seeking damages under Rule 23(b)(3), not a class, like the one at issue here, seeking injunctive relief. In any event, the proposed class *is* sufficiently ascertainable and determining eligibility for class membership would not require individualized inquiries.

## A. Rule 23(b)(2) Does Not Require "Ascertainability," Which the Proposed Class Nonetheless Satisfies.

"Ascertainability" and "definiteness" present no barriers to certifying the proposed class under Rule 23(b)(2). The Second Circuit has clarified that the "ascertainability" requirement is largely another way of describing problems related to the predominance or superiority requirements. *In re Petrobras Sec.*, 862 F.3d 250, 264-69 & n.20 (2d Cir. 2017). Neither the predominance nor superiority requirements (and thus neither the "ascertainability" nor "definiteness" requirements) apply, however, to classes seeking "an indivisible injunction benefitting all its members at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362-63 (2011); *compare* Fed. R. Civ. P. 23(b)(3) *with* Fed. R. Civ. P. 23(b)(2); *see also Kadel v. Folwell*, 100 F.4th 122, 160-61 (4th Cir. 2024) (holding that implied ascertainability requirement does not apply to

Rule 23(b)(2) class actions and collecting cases), *judgment vacated on other grounds*, 145 S.Ct. 2838 (2025) (mem.); *Shelton v. Bledsoe*, 775 F.3d 554, 559-63 (3d Cir. 2015) (same).

For this reason, courts have declined to impose a stringent "definiteness" or "ascertainability" requirement in other injunctive class actions. For instance, in *Floyd v. City of New York*, the lawsuit concerning the constitutionality of the NYPD's Stop and Frisk program, the court chastised the City for making the same argument it makes here, noting that the argument had been unsuccessful "for over three decades." 283 F.R.D. at 170-72. As the *Floyd* court explained, "[i]t would be illogical to require precise ascertainability" or "definiteness" for classes seeking only injunctive relief, given that members of the class need not be notified and the relief sought is only injunctive rather than compensatory. *Id*. Indeed, Defendants have cited no case where a class was denied certification under Rule 23(b)(2) because the putative class was not sufficiently "definite" or "ascertainable." *See, e.g.*, *Brown v. Sega Amusements, U.S.A., Inc.*, No. 13 Civ. 7558, 2015 WL 1062409 (S.D.N.Y .Mar. 9, 2015) (damages class action); *Burley v. City of New York*, No. 03 Civ. 735, 2005 WL 668789 (S.D.N.Y. Mar. 23, 2005) (same).

In any event, the proposed class *is* sufficiently definite and ascertainable. Here, Plaintiffs seek to certify a class of "all Black and Latino people who have been, or will be, labeled as a member of a 'crew,' 'gang,' or 'criminal group,' and entered into the NYPD's Criminal Group Database"—a group of people who are all similarly subjected to the municipal policies challenged in this lawsuit. *See supra* Section I(B). Given that all members of the putative class have, by definition, been tracked by Defendants in a Database that also catalogs race at the individual level, the proposed class is enumerated and identifiable. Because the proposed class is "defined using objective criteria that establish a membership with definite boundaries," it satisfies the "modest"

ascertainability requirement, to the extent it applies in this injunctive class action. *In re Petrobras Secs.*, 862 F.3d at 264, 269.

### B. Determining Class Membership Will Not Require Individualized Factual Inquiries.

Defendants are also wrong that the Court will need to conduct individual factual inquiries to determine class membership. Defs. Br. 7-10.

*First*, Defendants' argument is (again) based on an improper understanding of the law governing class actions seeking injunctive relief. Whether there are issues that require individualized proof is relevant only to determine certification under Rule 23(b)(3): to certify a class seeking damages, a court must ask if class-wide issues "predominate," meaning whether they "are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *see In re Petrobras Sec.*, 862 F.3d at 270 (describing distinction between "individual" and "common" questions as "central to the predominance analysis" in damages class actions). Accordingly, courts have rejected arguments that certifying a class under Rule 23(b)(2) is improper because determining class membership will require individualized factual inquiries. *See, e.g.*, *Dodge v. Cnty. of Orange*, 208 F.R.D. 79, 88-89 (S.D.N.Y. 2002) (finding that application of challenged strip search policy presented common questions of law or fact, in satisfaction of commonality requirement for injunctive class, and noting that question of "[w]hether individual issues will overwhelm the common questions is reserved for the discussion of predominance under Rule 23(b)(3)"); *Daniels v. City of New York*, 198 F.R.D. 409, 414-15 (S.D.N.Y. 2001) (certifying injunctive class challenging NYPD program of suspicionless stops and frisks and specifically rejecting City's argument that certification was unwarranted because determining class membership would "require individualized assessments of the merits of each putative class member's claim" and "mini-trials" on the "reasonableness of an

officer's suspicion" for each member of the class).[6] This Court should similarly reject Defendants' legally-erroneous argument here.

*Second*, even assuming the "individualized inquiries" argument is properly considered for an injunctive class, Defendants are wrong to suggest that the Court will need to answer questions such as the class members' awareness of being on the Database or the constitutionality of every stop or arrest of a class member, in order to determine class membership.[7] Defs. Br. 9-10. None of these questions are relevant to Plaintiffs' claims or class membership. As explained above, this lawsuit challenges the constitutionality of Defendants' municipal policies for creating, maintaining, and implementing the Database, which apply uniformly to all members of the putative class based on their inclusion in the Database. *See supra* Section I(B).[8]

Applying the proper standards, Plaintiffs have satisfied the requirements of Rules 23(a) and (b)(2). As explained in the motion for class certification, Plaintiffs have identified several questions of law and fact that are common to the putative class. *See* ECF No. 3-1, at 14-16. Defendants have not disputed that these questions satisfy the commonality requirement or that resolution of at least one of these questions would "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. Even if class members have unique factual circumstances, as Defendants urge, *see* Defs. Br. 6, 9-10, that does not preclude

---

[6] In rejecting the City's individualized inquiries argument, the *Daniels* court specifically found the City's reliance on cases about damages class actions unpersuasive. Defendants cite many of those same cases here. *See* Defs. Br. 8 (citing *Luedke v. Delta Airlines*, 155 B.R. 327 (S.D.N.Y. 1993), and *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400 (E.D. Pa. 1995), as the City similarly did in *Daniels*, 198 F.R.D. at 415).

[7] Specifically, Defendants assert that class membership will turn on whether "the purported class members were aware they were in the Database;" "they had been detained or surveilled by the NYPD during the relevant time period;" "such detention or surveillance was as a result of each individual's inclusion in the Database;" "they suffered damages in connection with that detention or surveillance;" they were actually a member of a gang; and, ultimately, the constitutionality of "every stop, detention, and/or arrest" of a putative class member. Defs. Br. 9-10.

[8] Furthermore, Plaintiffs' excessive detention claims do not challenge whether the NYPD had a proper basis for stopping a class member during any specific police interaction. *Contra* Defs. Br. 9. Rather, these claims challenge Defendants' extended detention-and-interrogation policy, which, again, applies to all people on the Database. *See* Compl. ¶¶ 176, 222-245, 439-443.

certification of an injunctive class. *See Marisol A. ex rel. Forbes v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (certifying class where the challenged policies flowed from "central and systemic failures" in child welfare system and rejecting argument that class certification was inappropriate because class members' differing harms would mean that no single injunction would provide a remedy for the entire class). Pursuant to Rule 23(b)(2), this Court should certify this civil rights class action, challenging the constitutionality of Defendants' municipal policies and widespread practices that apply uniformly to the putative class.

### III. The Court Should Grant Plaintiffs' Motion to Proceed Anonymously.

Defendants' Consolidated Memorandum misses the central point of Plaintiffs' Motion to Proceed Anonymously: the need for anonymity arises from the risk of retaliatory harm following a public release of Plaintiffs' identities as the named individuals challenging a discriminatory and abusive system that already targets them illegally. *See* Mem. Law Supp. Pls.' Mot. to Proceed Anonymously, ECF No. 2-1. Under the framework set forth in *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185 (2d Cir. 2008), and supported by sworn declarations, each relevant factor weighs heavily in favor of anonymity. ECF Nos. 2-2 ("Anderson Decl."); 2-3 ("Bradley Decl."); and 2-4 ("Cooper Decl.").

The fact that Plaintiffs have maintained confidentiality to date and are suing a governmental entity weighs heavily in favor of allowing them to proceed anonymously and distinguishes the majority of cases cited by Defendants.[9] Unlike private individuals, governmental

---

[9] *Doe v. Leonelli*, No. 22 CV 3732, 2022 WL 2003635 (S.D.N.Y. June 6, 2022) (denying motion for anonymity in private sexual assault action against priest, in part, because case was against a private party); *Rapp v. Fowler*, 537 F. Supp. 3d 521 532 (S.D.N.Y. 2021) (denying motion for anonymity for plaintiff alleging sexual assault by Kevin Spacey, in part, because case was against a private party); *Doe 1 v. Branca USA, Inc.*, No. 22-CV-3806, 2022 WL 2713543, at *4-5 (S.D.N.Y. July 13, 2022) (denying anonymity, in part, because case involved a private defendant); *Doe v. Skyline Auto. Inc.*, 375 F. Supp. 3d 401, 406-07 (S.D.N.Y. 2019) (suit against private party); *Doe v. Weinstein*, 484 F. Supp. 3d 90, 98 (S.D.N.Y. 2020) (suit against private party).

bodies do not have the same reputational interests at stake when they are publicly charged with wrongdoing. *Free Speech v. Reno*, No. 98 Civ. 2680, 1999 WL 47310, at *2 (S.D.N.Y. Feb. 1, 1999).[10] Defendants' reliance on *Doe v. United States* and *Doe v. City of New York* is misplaced because the plaintiffs in both cases—unlike Plaintiffs in this case—had already disclosed their identity to the government, and neither case involved credible allegations of retaliation or harm resulting from public disclosure. *Doe v. United States*, No. 16-cv-7256, 2017 WL 2389701 (S.D.N.Y. June 1, 2017); *Doe v. City of New York*, 201 F.R.D. 100 (S.D.N.Y. 2001).

Defendants fail to address the reasons Plaintiffs seek anonymity, including the numerous harms (economic and social consequences, among them) from revealing alleged gang affiliation.[11] *See Lozano v. City of Hazleton*, 496 F. Supp. 2d 477, 507 (M.D. Pa. 2007), *rev'd in part on other grounds,* 724 F.3d 297 (3d Cir. 2013) (allowing plaintiff to proceed anonymously where disclosure may affect plaintiffs' basic rights to shelter, education, and a livelihood). In sworn declarations, Plaintiffs detail how their employment prospects, housing stability, and community standing already are at risk because the NYPD has labeled them as gang members. *See* Anderson Decl. ¶¶ 6, 14, 18; Bradley Decl. ¶¶ 10-13, 26, 28; Cooper Decl. ¶¶ 5, 7-9. Public disclosure of Plaintiffs'

---

[10] In footnote 9, Defendants fail to distinguish the overwhelming authority Plaintiffs cite. Defs. Br. 23 & n.9. Defendants do not discuss the facts of these cases and ignore their holdings. Moreover, the case for anonymity is even stronger when plaintiffs seek protection from their local government "in their own country." *Id.* (citing *Sikhs for Just. v. Mann*, No. 23 CIV. 2578, 2023 WL 2876736 (S.D.N.Y. Apr. 10, 2023)).

[11] *See, e.g.*, Ryan Devereaux & John Knefel, *ICE Evades Sanctuary Rules by Using NYPD Fingerprints to Find Immigrants and Send Them Call-In Letters*, THE INTERCEPT (Apr. 26, 2018), https://theintercept.com/2018/04/26/ice-sends-threatening-letters-to-immigrants-increasing-climateof-fear-in-new-york-city/; Groups Urge NYPD Inspector General to Audit the NYPD "Gang Database," HUM. RTS.WATCH (Sep. 22, 2020), https://www.hrw.org/news/2020/09/22/groups-urge-nypd-inspector-general-audit-nypd-gang-database#_ftnref64 (finding that data sharing between the NYPD and NYCHA can have "detrimental consequences . . . especially if they live in NYCHA housing, which can permanently exclude 'dangerous' individuals").

names and the fact that they are or have been listed in the Database would only expose them to greater harm.[12]

Plaintiffs' fear of retaliation is real. Courts have permitted plaintiffs to shield their identities based on their "fear [of] governmental retaliation . . . and public harassment and intimidation," even when they have not yet experienced that harassment. *See CASA Inc., v. Trump*, Civ. No. 25-201, 2025 WL 2263001, at *12 n.8 (D. Md. Aug. 7, 2025) (permitting plaintiffs to proceed anonymously in lawsuit challenging executive order regarding birthright citizenship, based on plaintiffs' sworn declarations describing fear of retaliation and harassment). But here, Plaintiffs have further substantiated that fear, submitting sworn declarations that provide detailed accounts of prior NYPD stops, searches, and home visits, all triggered by the policies and practices they challenge in this litigation. *See* Anderson Decl. ¶¶ 8-13; Bradley Decl. ¶¶ 3-4, 11-13, 15-23; Cooper Decl. ¶¶ 4–6; *see also Doe v. Townes*, No. 19-cv-8034, 2020 WL 2395159, at *4 (S.D.N.Y. May 12, 2020) (citing *Plaintiffs # 1-21 v. Cnty. of Suffolk*, 138 F. Supp. 3d 264, 272 (E.D.N.Y. 2015) ("A risk of retaliation may be found where there is a history of substantiated prior action directed at plaintiff(s) from defendant(s).")). Notably, courts have recognized that plaintiffs who sue law enforcement agencies face a unique and serious threat of retaliation, particularly when the challenged policies and practices are actively enforced by the defendants. *See, e.g.*, *Cnty. of Suffolk*, 138 F. Supp. 3d at 272 (accepting allegations in the complaint as true and granting anonymity where "the Plaintiffs [were] repeatedly subjected to unconstitutional actions by [police]").

Moreover, public disclosure of Plaintiffs' identities would inevitably expose Plaintiffs' children to the same risks of retaliation, harassment, and stigmatization. *See NYCHA*, 2022 WL

_____

[12] One court granted anonymity to a public housing resident who credibly alleged that revealing her identity would put her at risk of retaliation from individuals in her building. *Doe v. N.Y.C. Hous. Auth.* ("NYCHA"), No. 22-cv-4460, 2022 WL 2072570, at *1 (S.D.N.Y. June 9, 2022).

2072570, at *2 (granting anonymity in part because plaintiff sought to protect her two minor children); *see, e.g.*, Bradley Decl. ¶ 13 (detailing encounter with officer who left two-week old daughter and newly postpartum mother on sidewalk after arrest); *see also* Anderson Decl. ¶¶ 5, 20; Bradley Decl. ¶¶ 10-11, 13-14, 28-31 (further detailing children's exposure to traumatic police encounters). Defendants fail to address this issue in any meaningful way, refusing to engage with the serious risks faced by Plaintiffs' families. Defs. Br. 18-19 & n.4.

Defendants are unable to demonstrate that Plaintiffs' anonymity would impede their ability to defend against Plaintiffs' claims because Defendants—not Plaintiffs—control the relevant discovery materials that are unrelated to an individual Plaintiff's identity: the Database criteria, audit documents, training materials, and internal communications.[13]

Finally, public disclosure of Plaintiffs' identities would have a chilling effect on the enforcement of civil rights laws that have a substantial risk of leading to retaliation and other harms. Defendants' position would deter victims of abusive and intimidating policing policies and practices and other government actions from seeking redress for constitutional violations, undermining the remedial purpose of 42 U.S.C. § 1983.[14] Indeed, in putative class actions raising constitutional challenges, "[t]he public interest is not in being able to identify any one Plaintiff, but in being able to follow the case to determine how the constitutional issues are resolved." *Does v. City of Indianapolis*, No. 1:06-cv-865, 2006 WL 2289187, at *3 (S.D. Ind. Aug. 7, 2006).

[13] As Defendants concede, *see* Defs. Br. 22 n.8, Plaintiffs proposed a protective order to facilitate appropriate discovery regarding information pertaining to the Individual Class Representatives. The parties were unable to reach an agreement. For the reasons stated above, anonymity is warranted even with a protective order in place. Nonetheless, if the Court believes the parties' positions regarding the protective order would inform its decision on this motion, Plaintiffs can provide the Court, in the form of a declaration and exhibits, further information regarding the proposed protective order and the related discussions.

[14] Defendants themselves acknowledge the deepening public interest in this case, citing a segment featured on the national television program *Last Week Tonight with John Oliver*. Defs. Br. 20-21.

Defendants' references to *Floyd* and *Stinson*[15] are irrelevant. Defs. Br. 22. The plaintiffs in those matters were not labeled as members of a criminal group; nor did they bring allegations of individualized targeting by virtue of inclusion in an NYPD database that contained detailed information about them. Even if plaintiffs in other cases did not have the particularized fear of retaliation and harm that *these* plaintiffs have, that is insufficient to conclude summarily that anonymity is unwarranted. *Sealed Plaintiff* mandates that the factors for anonymity be evaluated holistically for each case. *See* 537 F.3d at 189-90. Such holistic evaluation of the specific facts in this case demands allowing Plaintiffs to proceed with this litigation anonymously.

## IV. Defendants Have Not Demonstrated Good Cause to Warrant a Stay of Discovery.

Finally, Defendants argue that they have shown good cause to warrant a stay of discovery. Defs. Br. 24-25. Nothing in Defendants' brief supports their position.

In deciding whether the moving party has shown good cause to stay discovery, "courts in the Second Circuit consider: '(1) [w]hether the defendant has made a strong showing that plaintiff's claims are unmeritorious; (2) [t]he breadth of discovery and burden of responding to it; and (3) [t]he risk of unfair prejudice to the party opposing the stay.'" *Lawson v. Rubin*, No. 17 CV 6404 (BMC), 2018 WL 4211446, at *1 (E.D.N.Y. Mar. 7, 2018) (internal citation omitted). This inquiry "require[s] a particular[ized] and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Republic of Turkey v. Christie's*, Inc., 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018) (citation omitted). The party seeking a stay of discovery bears the burden of establishing good cause. *Capellan v. City of New York*, No. 20 CV 867, 2020 WL 13904618, at *2 (E.D.N.Y. Sept. 17, 2020). Defendants have not met that burden.

---

[15] *Floyd v. City of New York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013); *Stinson v. City of New York*, 282 F.R.D. 360 (S.D.N.Y. 2012).

All factors weigh against staying discovery. *First*, Defendants failed to make a strong showing on their potentially dispositive motions. As detailed *supra*, Defendants' arguments supporting their motion to dismiss and opposing class certification are meritless. Defendants have refused to engage with the substance of Plaintiffs' filings and, in doing so, have ignored well-pled facts, *see* Section I(B), overlooked relevant case law, *see* Section I(A), and relied on incorrect standards, *see* Sections II and I(D). That is a far cry from a "strong showing" that Plaintiffs' well-pled claims should be dismissed.

*Second,* Defendants contend that the breadth and burden of discovery will be extensive due to Plaintiffs' "sweeping claims of discrimination and constitutional violations." Defs. Br. 25. At this juncture, that claim is based on pure speculation—the parties have neither held, nor discussed, a Rule 26(f) conference, and initial disclosures have not been exchanged. Additionally, Plaintiffs have not yet propounded discovery, causing Defendants to have to guess about its scope.

*Third*, delaying discovery will heavily prejudice Plaintiffs. Given the early posture of the case, "the need for plaintiffs to begin the process of obtaining discovery is critical to preserving the memories of witnesses and to obtaining documents." *Capellan*, 2020 WL 13904618, at *5. Moreover, it is important to move cases like Plaintiffs' along because "if the allegations of an ongoing discriminatory policy at the [NYPD] turn out to be true, then it is in the public interest for those rights to be vindicated as soon as possible." *Cnty. of Suffolk*, 138 F. Supp. 3d at 281. This is especially true here, where Individual Class Representatives have also detailed the extensive and ongoing harassment resulting from their inclusion on the Database—and which also supports their motion to proceed anonymously. The Court therefore should deny Defendants' request for a stay.

# CONCLUSION

For the reasons set forth above and in prior submissions to the Court, Plaintiffs respectfully ask the Court to deny Defendants' motion to dismiss and motion to stay discovery, and also to grant Plaintiffs' motions to certify the class and to permit Plaintiffs to proceed anonymously.

Respectfully submitted,

September 25, 2025

*/s/ Kevin E. Jason*
Kevin E. Jason
Elizabeth G. Caldwell
Lauren Carbajal
Alexsis M. Johnson
Catherine Logue
NAACP LEGAL DEFENSE &
 EDUCATIONAL FUND, INC.
40 Rector St., 5th Floor
New York, NY 10006
(212) 965-2200
kjason@naacpldf.org
bcaldwell@naacpldf.org
lcarbajal@naacpldf.org
amjohnson@naacpldf.org
clogue@naacpldf.org

Philip Desgranges
Rigodis Appling
Alexandra Ogunsanya**
THE LEGAL AID SOCIETY
49 Thomas St, 10th Fl.
New York, NY 10013
(212) 577-3398
pdesgranges@legal-aid.org
rtappling@legal-aid.org
aogunsanya@legal-aid.org

Anne Venhuizen
THE BRONX DEFENDERS
360 East 161st St.
Bronx, NY 10451
(718) 838-7878
annev@bronxdefenders.org

Marjorie J. Peerce
Samuel J. Erlanger
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019
(212) 223-0200
peercem@ballardspahr.com
erlangers@ballardspahr.com

Andrew Case
Mariana Camilla Lopez
LATINOJUSTICE PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
(212) 219-3360
acase@latinojustice.org
mlopez@latinojustice.org

Samhitha Medatia
BALLARD SPAHR LLP
999 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
(678) 420-9300
medatias@ballardspahr.com

Marcel S. Pratt*
Katherine L. Oaks
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500
prattm@ballardspahr.com
oaksk@ballardspahr.com

Christopher A. Hatfield
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington,  DC 20006
(202) 661-2200
hatfieldc@ballardspahr.com

*Pro Hac Vice motion forthcoming*
**Admission application forthcoming*

## LOCAL CIVIL RULE 7.1 CERTIFICATION

In accordance with Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and Individual Practices of Judge Brian M. Cogan § III.C.1, I hereby certify that the total number of words in the foregoing Memorandum of Law, exclusive of the portions exempted by Local Civil Rule 7.1(c), is 8,695. I have relied on the word count function of Microsoft Word to prepare this certification.

Dated:       New York, N.Y
               September 25, 2025

/s/ *Kevin E. Jason*
Kevin E. Jason
NAACP Legal Defense &
 Educational Fund, Inc.
40 Rector St., 5th Floor
New York, N.Y. 10006
(212) 965-2200
kjason@naacpldf.org

*Counsel for Plaintiffs*